My name is Helen Bruner. I'm an assistant United States attorney for the Western District of Washington here representing the United States. This case addresses the question of whether the registration requirements for machine guns and easily concealed weapons contained in the National Firearms Act applies to a pistol and detachable shoulder stock that were stored together and that, when attached together, create a short-barreled rifle. The district court in this case, in granting a new trial, concluded that because Mr. Kwan possessed a second registered military model pistol and shoulder stock and claimed that the shoulder stock at issue in the trial could be used as a spare for the military, the registered military model, that the jury should have been instructed that it could convict Mr. Kwan only if he had no ostensible legal purpose for the detachable shoulder stock other than to convert the civilian model, the pistol at issue in the trial, into a short-barreled rifle. And it's the government's contention here that neither the language of the statute nor the Supreme Court's decision in Thompson Center Arms, on which the district court relied, require that result or even point to that result. And, in fact, to accept the district court's analysis of this case and of the legal requirements, in essence, is to turn the statute on its ear. I'm wrong. The understanding I have is that the stock in question can either fit with an item that would create an illegal weapon or it can be combined with an item that is perfectly legal when combined. Is that right? No, Your Honor. That's not correct. What the stock in question looks like is this. And in this case, what I'm showing you is the picture of the stock with the pistol inserted. There are two types of pistols. Mr. Kwan owned both. Actually, there are three, but for purposes of this case, there are two. One is the military model that, when the stock is attached, has a selector switch that allows it to become either a short barrel rifle or a machine gun, which, with one pull of the trigger, shoots three shots with one pull of the trigger. The second pistol at issue in the trial is the so-called Z model or civilian model, which does not have a mechanism inside it in order to create a machine gun. But it does have the ability to have the shoulder stock attached, at which point when you now have a short barrel rifle. So the only question is whether or not Mr. Kwan had in his, I should say Mr. Kwan owned, in his possession at the time, he only had the civilian model in the stock, but he had ownership over the military model and the stock, which had been seized by ATF. He has two pistols. He has the military. He has the BP-70M and the BP-70Z. Right. He has two stocks. Two stocks. And at least the Z model was found inserted into the stock. It was holstered. That's correct. Okay. And how about the military model? Where was it found? The military model was actually seized, taken into custody, if you will, and in the custody of ATF in March of 2004, so nine months before the search. Was it taken with the stock? With the stock. Okay. So by the time they got to this one, there was one gun and one stock in his home. That's correct. Because the other one had previously been seized. That's correct. Okay. Now, the other one was not unlawful for him to have. Is that correct? There was a lot of back and forth in the district court over this. That gun was not unlawful for him to have because it was a pre-1986. Right. So why was it seized? It was seized, actually, because it was a machine gun. And I think at that point there was some confusion as to his licensing requirements as well. But it was lawful for him to possess that even as a machine gun? Yes. It was a return to him? It is still in the possession of ATF. Mr. Kwan had at the time, well, prior to 2002, had actually licenses as a manufacturer of firearms, both here and in Idaho, a manufacturer of ammunition and an importer. And in any event, if he does not have those licenses in Washington State, it's illegal for him to possess a machine gun in Washington State, which is why his trial testimony talks about moving his collection of machine guns to Nevada. So that's part of the reason this firearm was seized. But to answer the Court's question, in case I have not done so, I think the back and forth for purposes of the Court was whether or not he could have had constructive possession. So I think in that discussion during the post-trial hearing on the motion for new trial, I think the government conceded that he could have had legal possession, even though it was not in his possession at the time. Okay. So for purposes, for our purposes then, we are to understand then that on the day in question when the ATF comes in, that there are two pistols and two stocks in his possession. That's correct, Your Honor. And the reason that I take, that the government takes the position that this would place the statutory purpose, well, turn the statute on its ear to basically say that an individual by virtue of that individual's stated intent, in this case, Mr. Kwan's position was that he possessed that stock, even though his pistol was stored within the stock, and even though that civilian model pistol and stock had been connected within a couple of seconds, that he was not required to register it as a short-barreled rifle merely because the military model was in fact registered and was therefore legal for him to possess. That analysis would mean that the entire purpose of registration in the statute, whether or not these easily concealable weapons needed to be registered, would turn entirely on what someone says they're going to do with it. And if I can use four examples to illustrate why that really cannot work. Note, I don't think there's any question that if Mr. Kwan possessed only the civilian model and the stock, that alone and nothing else, he would have had to register it. Now, if one then says he possesses the military model, the civilian model, and two stocks, and that the question turns on his intent, then he would not have to register this item merely because he said, I intend to use it for something else, so long as he didn't attach it, at which point it becomes a short barrel and he would have to register it. And it would equally, I suppose, be true if he changed his mind halfway through this process and said, you know, I have two stocks. I really don't need this as the spare. I think I'm going to now intend to use it solely with my civilian model. And at that point, it would again become subject to registration. That is why the registration provisions of the statute and as well the criminal provisions of the statute do not turn on someone's intent. They turn rather on whether or not the weapon meets the definition. And for purposes of the criminal statute, they turn on whether or not the person knowingly possessed it and was aware of the characteristics of the firearm that made it subject to registration, not on whether or not they willfully intended to possess an unregistered firearm. I think that's quite clear from the Supreme Court's decisions in Rogers and Freed. So it is for that reason that we think that the interpretation that the district court gave to this statute has not – it does not accord with the statute and therefore is an error of law, meaning that the district court abused its discretion in granting a new trial here. Now, the district court relied heavily on Thompson center arms, and I must say I've read the case a number of times, both in working on the brief and in preparing for argument, and I still come to the conclusion at the end of the day that this plurality opinion can only be applied to its facts. And I think that's the kind of construction that the Supreme Court itself has suggested in Marks and most recently in the discussion in its money laundering case in Santos. But to the extent that you have any analysis that you can glean anything from Thompson, Thompson turned on whether or not the manufacturer of a kit that included parts necessary to turn a pistol into a rifle needed to register that pistol – needed to register that kit and pay the tax. I think the analysis falls apart, the analogy falls apart when you have what we have here, because what we have here is actually a pistol and a stock that has the purpose of creating a short barrel and not three parts that are necessary to create a long rifle, even though he has a registered firearm. In essence, what he would like is for this Court to adopt a rule of law that would require basically consideration of a defendant's or a possessor's intent and therefore allow an individual to say, similarly, you could have 20 pistols and 20 stocks and say, because they are easily broken, even though I've never shot the original pistol that I've registered, I can possess 19 more. What if the instruction said apparent instead of ostensible? I think the answer would be the same, Your Honor. I don't know that there is any difference there if the focus is on the legal purpose and the argument is it's legal because I have now said I intend to use it for this purpose. If you're looking at the purpose alone for this combination, I think the conclusion you could draw is that the purpose for the stock, based on where the pistol was stored, was to be used with this particular pistol. But, again, that focuses back on turning the question of when the law applies on the question of what an individual intended. And there's nothing in the statute that requires that. And I might add here there's nothing unfair about that, given that a criminal prosecution would turn on whether or not an individual actually had knowledge of the end result here, that is, that a short barrel rifle could be created from that. That's the standard that the Court requires of us to prove for purposes of criminal conviction. And in this instance, Mr. Kwan stored the two items together. Mr. Kwan was certainly someone who is a collector of firearms by his own admissions, had hundreds of firearms, over 100 machine guns in storage in Nevada, and also a dealer of firearms, very well familiar with the requirements. Roberts. Do you want to take some time for rebuttal? I do, Your Honor, if that is permissible to the Court. Thank you. Thank you. May it please the Court. Joseph Conti on behalf of Mr. Kwan. Your Honor, first of all, I'd like to clarify the what happened with the M model. The military model? The military model. It wasn't seized. The government took it for safekeeping because they couldn't determine at the time whether Mr. Kwan was a pre-1986 dealer sample. So it wasn't like there was a seizure here. It was all done with the attorney's presence and with the ATF's concurrence. They took the guns for safekeeping. They did, in fact, offer to return it, and that's in the record at the motions hearing on the motion for a new trial. But at the time, Mr. Kwan had these other difficulties, and he didn't go down and pick it up. So there was no seizure of the first gun. It was just taken by agreement by the ATF until they could ascertain whether it was, in fact, a 1986 sample, a dealer sample, pre-1986 dealer sample. So that's the background on that. Your Honor, I think where the government has the problem is when you have three pieces. If you have the Zed version, the military version, and one stock, I think the jury instruction that was given, they could have convicted Mr. Kwan, still convicted Mr. Kwan, because although the machine gun was registered, the short barrel rifle was not. So I think what your argument is that if in one raid the ATF had gone into Mr. Kwan's home or business and found the military version and the non-military version of the pistol sitting on top of a counter or wherever, and one stock, that the jury could properly convict Mr. Kwan, in that instance, on the instructions that were given, even though they were not attached, they were not together, and his purpose in having that single stock was to use it only or attach it only to the military version. The jury instructions would have permitted that conviction. And was that what Judge Zille was concerned about? Because of these what happened with the military version, as my colleague has pointed out, we have to look at the record as if for the purposes of the trial and the criminal charge that he lawfully possessed the military version, even though he didn't have it. Right? He did lawfully possess it. Yeah. And that was agreed to. All right. Judge Zille said he would have directed a verdict that there had only been one stock and two guns. But I think if it had gone to the jury under those instructions, if the judge made a mistake, that the instructions that were given would have resulted in a conviction, even though one would have been a registered M version and the other one was just a pistol laying there without any additional stock. And I think that's the issue here. And the question is, it's not here for intent. I don't see that this case is any different than Thompson Center Arms. The Thompson Center Arms, they had either a short barrel rifle or a pistol. And with this configuration of parts, you still come to the same conclusion that it can be one or the other. And that's why the Supreme Court in Thompson Center applied the rule of lenity. Let me take another example. Anybody could walk into a store, buy a rifle, buy a shotgun. Now, there's no short barrel rifle here. And the manufacturer, the seller is not selling a short barrel rifle. But somebody could take that thing home, saw off the barrel, and they have a short barrel rifle. And that's what the Supreme Court saw in Thompson Center. And I think that situation applies here. Anybody can convert, can make a short barrel rifle out of any legitimate firearm. It's the making. And that's what the Supreme Court said. What if Mr. Kwan had had a gun locker off-site and had the military model plus one stock in the gun locker off-site but had a cabinet at home in which he had the C model plus the stock? What would he do there? I think that there's some kind of jury instruction that can be written. But you think that that is a – that that has to – you think that that case can go to a jury? I'm not – I think there's some instructions that can be written. I haven't flushed them out in my mind. I've tried. If there are instructions that can be written, then the case could go to a jury. Right. But I think what the bottom line here is that if there's another purpose and – That's a close call. I think he could have directed a verdict. He didn't know the answer even at the motions hearing, and we discussed it. I think under those circumstances he would have had to have directed a verdict. The equities here are he had this thing, he had this stock. It could have been used on the other one. But we never got a chance to argue that to the jury or tell them anything. And it's a strict liability offense. If you possess it, you're guilty. But that's not what Thompson Center says. If there's another ostensible use for it, then you can't be guilty. Plurality. Plurality is the word, ostensible. Okay. It's the plurality that does that, but – You have three votes for ostensible. All right. Yes. But we'll look at the other facts in this case. At the time, first of all, he acquired, according to the facts of this case, he acquired the second stock before he acquired the Z model. And that's in the record at 247. Then look at the other facts of this case. He is a manufacturer. He has a manufacturer's federal firearms license, and he's a special occupational taxpayer. When he acquires it, if he wants to make a short-deal rifle, he doesn't have to pay any extra money. All he has to do is fill out an ATF Form 2 and send it in to the ATF. Perfectly legal. And here we are. We're talking about where do we draw this line about intent when the fact is that if he had intended anything, all he had to do was send in the form. He had no qualm about filling out any form. His records were good. He made a, he made, he bought the stock for the M. And, in fact, the stock is what makes the M work. That's another thing I wanted to clarify with this Court. The stock itself, of course, as the Court can see on the government's exhibit, the stock itself has two selector switches. It can either fire a single shot or it can fire three rounds at a time. But, and here's the big but about this, this stock only works on the M model. You can't use this stock on the Z model and have it fired in a three-shot burst. So the utility of the stock is it converts the M model into the machine gun with the three-shot burst. And to use it on the civilian version, I agree it makes it a shooting platform, but it accomplishes little else. It doesn't make it more concealable. In fact, it makes it less concealable. So when the government argues in their brief that they're frustrating the intent of Congress, I think that's sort of a misnomer here because what you're doing is making something that is concealable even less concealable. I think the other problem with talking, going from the example of the two guns, one stock, you keep going to where you have multiple guns and one stock. So if you have ten VP-70Zs in one stock, if the instruction would permit the jury to convict on all ten of the VP-70Zs, even though you have one stock because it's the government's instruction, the instruction read to the jury goes to the weapons themselves. And it doesn't segregate out and say, well, if it has another use, if it's only going to be used with this one gun, then you can't convict on the other two, three, four, five, six, seven, eight, nine, ten guns. Okay. Thank you. I think we've got your argument. Rebuttal from the government? Briefly, Your Honor, if I might. A couple of points. I think the – let me get to the heart of it. I think what counsel's arguing here is a different case than we have, whether or not – and I might – in this way, because he's arguing that the jury instructions might reach an anomalous result if you had two guns and one stock. We have two guns, two stocks. And the only question is whether or not his intent to use it for another purpose or his stated intent, if the jury believed him, should otherwise exempt him. We could have a discussion about whether or not two guns and one stock would require both guns to be registered. I think we would. But that is not the case. And so whatever Judge Zille might have thought about that, the instructions given to the jury really have to focus on the situation that we have here and whether or not the statute should be interpreted that way. In terms of concealability, I think the question is really answered by what you can do with this. You can put the pistol inside the holster. Now you not only have a pistol, but you have a much more accurately fireable weapon, a short barrel rifle, because now you have the ability to put it on your shoulder with the stock. In terms of the equities, counsel argues that Mr. Kwan testified that he got the second stock before he got the pistol. That may or may not be true. That's certainly what he testified to, and we had no evidence to the contrary. I don't mean to suggest that there's contrary evidence in the record. But in any event, he stored the two items together. So taking all of these things together, I think here that unfortunately the district court did err. I think the suggestion that there should be an ostensible legal purpose instruction given to the jury was not supported by the statute or the case law. And for that reason, we respectfully ask this court to reverse Judge Zille's ruling granting a new trial. Okay. Thank you for your argument. Thank you both sides for the argument. The case just argued will be submitted for decision, and the court will stand at recess for the day.
judges: Nelson, Hawkins, Bybee